# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 1:24-cv-02498-CNS-TPO

BASALT REAL ESTATE LLC, an Iowa limited liability company

    Plaintiff,

v.

SILVERPEAK CORP., a Colorado corporation, and
CHAPMAN DUCOTE, an individual,

    Defendants.

---

**OPPOSITION TO PLAINTIFF'S *EX PARTE* MOTION FOR PREJUDGMENT ATTACHMENT**

---

Defendants Silverpeak Corp. and Chapman Ducote, by and through their undersigned counsel, hereby file their Response in Opposition to Plaintiff's *Ex Parte* Motion for Prejudgment Attachment as follows:

## I. INTRODUCTION

Plaintiff's *ex parte* Motion, which demands that Defendant Ducote set aside $2 million from the potential future sale of real property owned by Moonshot Ranch, LLC – an entity that is not a party to this case and over which the Court has no jurisdiction – is an underhanded hail-mary filing. It is procedurally flawed and violates numerous court rules and conduct standards. It is substantively flawed and Plaintiff's affidavit is easily contradicted and traversed. The fact that the Plaintiff tried to hide this Motion from the Defendants – *while they were represented by legal counsel* – is inexcusable.

## II. PLAINTIFF'S MOTION VIOLATES THE COURT'S PRACTICE STANDARDS AND STANDARDS OF CONDUCT

This lawsuit has been pending and litigated for more than a year. On September 10, 2024, Plaintiff filed its Complaint in this Court. [Doc no. 1] It previously sued these same Defendants for these same claims in Colorado state court. The case involves the breach of a commercial lease for property in Basalt, Colorado and the related limited personal guaranty.

The instant motion does not involve Silverpeak at all and Plaintiff seeks no relief from this Defendant.[1] Rather, the instant Motion asks that Defendant be made to "hold and maintain" $2 million in cash from the potential future contingent sale of real property near Aspen, Colorado, based on a limited guaranty that Plaintiff itself acknowledges is only "$855,499.92 plus all property taxes which were not paid by Tenant." *See* Compl., doc no. 1 at ¶ 11. To be more specific, Plaintiff asks that Mr. Ducote be forced to set aside $2 million when its own Complaint alleges that the maximum Plaintiff can recover on the limited guaranty (if it prevails at all) is only $963,258.60. *See* Compl., doc no. 1 at ¶ 29. The Plaintiff then disclosed this same amount under Rule 26(a(1). This is but a single example of the frivolity of Plaintiff's Motion.

These issues aside, the Motion violates the Court's practice standards and can be summarily denied on these grounds alone. First, Plaintiff filed the Motion as an "*ex parte*" motion, even though Defendants have at all times been represented by the undersigned legal counsel. The Plaintiff then intentionally hid the filing from the undersigned. Specifically, on September 12, 2025 at 11:56 a.m., Plaintiff filed this Motion with Level 2 restriction, which

---

[1] The Court may disregard the argument that over $20 million in damages are owed. That amount is not recoverable from Silverpeak, which is insolvent, and is not recoverable under the limited guaranty.

under D.C.COLO.LCivR 7.2(b) blocks the Defendants from obtaining access to the filing. [Doc no. 43] Plaintiff did so fully knowing that the undersigned would not have access to it. As an additional practice standard violation, Plaintiff filed the Motion with a Level 2 restriction without filing a Motion to Restrict, as required by D.C.COLO.LCivR 7.2(c).

When Defendants tried to access the filing they were unable to do so. On Saturday, September 13, 2025 at 7:57 a.m., not knowing what the Plaintiff had filed (and not even knowing that it was an *ex parte* motion or a motion for prejudgment attachment), the undersigned sent an email to Plaintiff's counsel and asked that Plaintiff provide a copy. At 9:19 a.m., Plaintiff responded: "It was filed ex parte." When the undersigned repeated the request, at 10:40 a.m., Plaintiff repeated the flip comment of "It was filed ex parte." It was only after the undersigned advised Plaintiff that filing a motion *ex parte* without conferral and while Defendants are represented by counsel violates the Court's practice standards did the Plaintiff relent and email a copy of the Motion at 3:18 p.m. [Email chain attached as Exhibit A]

This underhanded behavior is yet another independent violation of the Court's practice standards, including the duty to confer regarding Motions under D.C.COLO.LCivR 7.1. The Rule requires that Plaintiff "confer or make reasonable good faith efforts to confer with any opposing counsel or unrepresented party to resolve any disputed matter" and describe "the specific efforts to fulfill this duty." There is no exception in the rule for a Motion of this type. Plaintiff clearly did not confer, and to the contrary, *actively tried to hide a Motion* from litigants who were represented by counsel. There is no legitimate basis for this behavior; the Motion could just as easily have been filed after conferral and discussion in the regular course.

Second, to make things worse, on Monday, September 22, 2025 at 11:50 – yet again without conferring with the undersigned or permitting the Defendants the appropriate time to respond to the Motion – the Plaintiff then sent an email to Magistrate Judge O'Hara's chambers *and advocated for its motion*. The improper email [Exhibit B] states "The auction which prompted the motion has been completed. Plaintiff has since learned that the closing on the sale of the subject real estate to the high bidder at auction in [sic] scheduled to close in early October. Based on this information and for the reasons fully set forth in the motion, plaintiff respectfully requests that the motion be addressed by the Court forthwith."

This improper advocacy is another violation of the Court's practice standards, as violates D.C.COLO.LCivR 77.2, which prohibits communications with a judicial officer. The Rule states: "Unless otherwise ordered, a party to or an attorney in a proceeding shall not communicate directly about the proceeding in any manner with a judicial officer assigned to the proceeding."

Plaintiff's obtuse behavior is difficult to believe. Plaintiff filed an exceedingly important motion; refused to confer; intentionally restricted the Defendants from receiving it without approval to do so; refused to provide the Defendants with the filing for two days; then advocated directly to the Court without giving the Defendants any opportunity to file a response brief. None of this behavior was necessary and the issue could have and should have been handled in the normal course. In light of these violations, Defendants ask that the Motion be denied and that Defendants be awarded attorneys' fees and costs.

### III. PLAINTIFF'S MOTION LACKS SUBSTANTIVE MERIT.

**A. Colorado Law Requires Strict Compliance With Rule 102.**

Plaintiff's Motion glosses over the strict compliance requirements to obtain the extraordinary relief it seeks – forcing Mr. Ducote, before judgment is entered, to set aside $2 million for a property owned by an entity over which the Court has no jurisdiction. Plaintiff acts as if Courts regularly awards such relief. They do not; the opposite is true.

Federal Rules 64(a) and (b) allow federal courts to apply state court remedies such as "arrest; attachment; garnishment; replevin; sequestration; and other corresponding or equivalent remedies." See Fed. R. Civ. P. 64. Under Colorado state court rule 102, though a litigant can seek prejudgment attachment, such an extraordinary remedy is authorized only "under limited circumstances." *Conry v. Baker*, No. 14-CV-02672-CMA-KLM, 2015 WL 4538720, at *2 (D. Colo. July 28, 2015) (Mix, Mag. K.); (*citing Young v. Ewen*, No. 07-cv-01223-MSK-CBS, 2007 WL 2792448, at *2 (D. Colo. Sept. 25, 2007)).

The rule – which the Plaintiff did not follow – is quite technical. It includes very specific requirements, none of which the Plaintiff met. First, Plaintiff must make an extraordinary showing of need. The language of the Rule is written in the negative and makes it clear that the presumption is that no attachment shall issue: "[n]o writ of attachment shall issue unless" Plaintiff shows "by affidavit or testimony in specific factual detail that there is a reasonable probability" that Mr. Ducote "(4)…is presently about to remove his property or effects, or a

material part thereof, from [Colorado] with intent to defraud, delay, or hinder one or more of his creditors."[2]  *See* Colo. R. Civ. P. 102(c)(4).

Second, the Plaintiff must post a bond.  While the rule does not address the amount required, the Rule does not permit the Plaintiff to file a motion of this type *without posting any bond*.  Unlike other portions of the Rule, the language is written in the affirmative ("shall furnish") and states:

> **(d) Plaintiff to Give Bond.** Before the issuance of a writ of attachment the plaintiff *shall furnish a bond* that complies with the requirements of C.R.C.P. 121, § 1-23, in an amount set by the court in its discretion, not exceeding double the amount claimed, to the effect that if the defendant recover judgment, or if the court shall finally decide that the plaintiff was not entitled to an attachment, the plaintiff will pay all costs that may be awarded to the defendant, and all damages defendant may sustain by reason of the wrongful suing out of the attachment. The defendant may require the sureties to satisfy the court that each, for himself, is worth the amount for which he has become surety over and above his just debts and liabilities, in property located in this state and not by law exempt from execution.

*See* Colo. R. Civ. P. 102(b).  Not surprisingly, given the "shall furnish" verbiage of the rule, Colorado case law interpreting this rule uniformly hold that a bond is mandatory.  *Young*, 2007 WL 2792448, at *2 (*stating* a writ of attachment under Colo. R. Civ. P. 102 "cannot issue without payment of a bond"); *Conry*, 2015 WL 4538720, at *3 (same).  Plaintiff provides no case law permitting prejudgment attachment absent a bond.

Third, the Plaintiff's requested amount must be precise and the Plaintiff cannot simply make up a number willy-nilly as the Plaintiff has done here.  Rule 102(b) states, again in the negative, that "(b) Affidavit. No writ of attachment shall issue unless the party asserting the

---

[2] Plaintiff does not discuss any of the other subsections of Rule 102 and they are thus inapplicable.

claim…shall file in the court …an affidavit setting forth that the defendant is indebted to the plaintiff,…stating the nature and amount of such indebtedness or claim for damages." *See* Colo. R. Civ. P. 102(b).

**B.        Plaintiff Fails to Meet the Requirements of Rule 102.**

Under the strict compliance standard applicable to Rule 102, Plaintiff's Motion fails. First, Plaintiff failed to post any bond in any amount. Plaintiff asks that the Court ignore this requirement, arguing that "the court's [sic] may and should exercise its discretion in declining to order BRE to post a bond."

There is no support for this argument, and Plaintiff provides none. There is not a single case ignoring this requirement. And Plaintiff makes no effort to comply with this requirement. The Motion can be denied on these grounds alone.

Second, the Motion can likewise be denied because the Plaintiff's demand for $2 million to be set aside makes no sense. It is not based on any calculation and is not based on any reasonable assessment of anything. In fact, the Plaintiff provides no explanation for this amount, which appears punitive more than anything.

As noted, the personal guaranty is limited. It is for "$855,499.92 plus all property taxes which were not paid by Tenant." *See* Compl., doc no. 1 at ¶ 11. And the Plaintiff itself in the Complaint alleges that the maximum Plaintiff can recover on the limited guaranty (if it prevails at all) is only $963,258.60. *See* Compl., doc no. 1 at ¶ 29. Likewise, Plaintiff's calculation of potential liability under the limited personal guaranty, as identified in Plaintiff's own Rule 26(a)(1) disclosures, is only $963,258.60. [Exhibit C]

It is the Plaintiff's burden to meet this requirement to "state" the appropriate amount. It is not up to the Court, or someone else, to determine an appropriate amount. Because the Plaintiff makes no effort at all to determine a reasonable amount, the Motion can be denied under the strict compliance requirements of Rule 102.

It is likewise questionable whether the full amount of the limited guaranty will be recoverable at all. The Plaintiff has failed to mitigate its damages, choosing instead to let the property sit vacant with little effort to sell or lease it. The Affidavit of Richard Hurd is intentionally non-specific about Plaintiff's efforts to sell or lease the property at issue. Without providing any specifics, the Affidavit merely states that that Plaintiff "marketed" the property "for sale or lease." (Hurd Aff. At ¶ 12) There is no discussion of when those efforts were made, whether the property has been removed from the market and what the agent supposedly has done.

The Plaintiff's failure to mitigate bars the Plaintiff from seeking damages that landlord could have reasonably avoided. *Tremitek, LLC v. Resilience Code, LLC*, 2023 COA 54, ¶ 53, 535 P.3d 1005, 1015. Based on Mr. Ducote's personal knowledge, it is a fact that the Plaintiff has taken the property off the market at times, has not had the property for sale or lease for large periods of time, and has not even had for sale or lease signs in front of the building. [Exhibit E, Ducote Affidavit] In fact, it was Mr. Ducote who was working on the Plaintiff's behalf to try to arrange a sale of the building to neighboring property owners, a deal that the Plaintiff itself blew up. [*Id.*]

Third, and most surprisingly, Plaintiff failed to provide a legitimate and evidentiary sufficient basis under Rule 102(c)(4) that Mr. Ducote "is…about to remove his property or

effects, or a material part thereof, from [Colorado] with intent to defraud, delay, or hinder one or more of his creditors." What the Plaintiff instead did was to recite a litany of grievances that the case has not yet settled. Plaintiff's Motion and the accompanying affidavit allege that: Mr. Ducote owns property in Aspen; the property is owned by Moonshot Ranch, LLC (which is not even subject to the Court's jurisdiction); the property is up for auction; the parties have discussed settlement numerous times; the case has not settled *under terms the Plaintiff demands*, even after the settlement conference with Magistrate Judge O'Hara; "It appears evident…that Mr. Ducote has no intention of voluntarily paying BRE anything"; and Plaintiff "*infers*…that these proceeds will not be paid over to BRE but instead will be transferred out of Colorado or otherwise out of the reach of Plaintiff." [Motion at pp. 7-8; Hurd Aff., doc no. 43 at ¶¶ 14-25]

Plaintiff even makes the false claim, easily disproven by the email chain attached as Exhibit D – that "Ducote called off the continued Settlement Conference on the pretext that he wanted to wait until after the completion of the Moonshot Ranch auction." (Mot. at p. 9) Plaintiff plays fast and loose with facts. The actual evidence shows that a Defendants asked to *vacate and reset the second settlement conference until after the sale was completed, but the Plaintiff unilaterally decided to cancel the settlement conference entirely*. [Exhibit D]

Plaintiff's mistruths aside, Plaintiff's Motion fails to meet the standard of Rule 102. Plaintiff has provided no actual evidence that Mr. Ducote "is presently about to remove his property or effects…from [Colorado] with intent to defraud, delay, or hinder [the Plaintiff.]" There is no evidence that Mr. Ducote has taken any steps to remove property; no evidence that he has stated to anyone that he intends to remove property; no evidence that he has advised anyone that he does not intend to resolve this dispute. There is no evidence of a plan. There is

no evidence of fraud. There is no evidence of absconding or a plan to abscond. There is no attempt to identify where assets may be sent. There is not a single fact to support this ridiculous claim. The best the Plaintiff does is "infer" that the situation exists and show its own frustration that the case has not settled *on terms the Plaintiff demands*.

The Motion must be denied under the on-point precedent of *Haney v. Castle Meadows, Inc.*, 816 F.Supp. 655, 657 (D. Colo. 1993) (Kane, L.). Interestingly, Plaintiff cites this case repeatedly in its Motion for general legal standards but ignores the actual holding of the case. In *Haney*, the plaintiff attempted to obtain a prejudgment attachment of the defendant's assets, particularly the real property the defendant was purchasing. *Id*. at 655. After the defendant issued a traverse of the plaintiff's affidavit, the Court ruled that the plaintiff's argument that "[the defendant] intend[s] to distribute the proceeds of this sale out of CMI and RTC to third party creditors within and without the state as soon as possible in an effort to place these proceeds beyond my reach" was insufficient to obtain an attachment under Rule 102. *Id*. at 656. It held that, as a matter of law, this type of allegation was insufficient and "Haney must still demonstrate that CMI at least intended to hinder or delay him from collecting on a judgment…[and] Haney has not done so." *Id*. at 657.

The same facts are present here. In this case, the Plaintiff seeks an attachment by claiming without any evidentiary support that Mr. Ducote will "move assets to which he is entitled from the ranch sale out of the reach of BRE." (Mot. at p. 7) That statement has no evidentiary support and that argument is insufficient as a matter of law under *Haney* to obtain the relief being sought.

Moreover, it is a simple matter to traverse the Plaintiff's affidavit, as it is merely the Plaintiff's spin of what has actually taken place. [Exhibit E, Ducote Affidavit] Defendants have no plan to "abscond" with funds. [*Id*.] Plaintiff ignores that Mr. Ducote has made several settlement offers to resolve this case, including an offer that included security at the June 26, 2025 settlement conference. [*Id*.] Plaintiff ignores that the Plaintiff's demand at the settlement conference – after agreeing to a $1 million payment from Mr. Ducote – was in excess of $2 million, an amount it will never recover from Silverpeak or under the limited personal guaranty. [*Id*.] Plaintiff ignores that it demanded security in the form of a lien in the Aspen property, all the while knowing that such a demand was impossible to meet because Mr. Ducote was not the sole owner of the property at the time. [*Id*.] Plaintiff ignores that it could have settled this dispute and be in a position to receive a payment had its own demands not increased. [*Id*.] So the only thing the Plaintiff has proven is that the parties have been negotiating in good faith and they have not reached a resolution *on terms that the Plaintiff demands*. That is not the basis for prejudgment attachment.

Fourth, the entity that owns the property in Aspen, Moonshot Ranch, LLC, is not a party to this case and the Court does not have jurisdiction over this entity. Despite this concern, Plaintiff asks that the Court "restrain Moonshot Ranch LLC from distributing $2,000,000 of the proceeds of the ranch sale to Ducote." (Mot. at p. 7). While the Court certainly has jurisdiction over the Defendants, this request is an impossibility.

## V. CONCLUSION

Plaintiff's Motion fails to meet the strict legal standards of Rule 102 and was intentionally filed in a manner that was meant to cheat the system and avoid giving the

Defendants an opportunity to respond. The Plaintiff's frustration that no settlement has been reached (a frustration the Defendants share) is not the basis to obtain prejudgment attachment. The Motion should be denied and Defendants request statutory remedies, including attorneys' fees.

WHEREFORE, Defendants Silverpeak Corp. and Chapman Ducot respectfully request that Plaintiff's *Ex Parte* Motion for Prejudgment Attachment be denied, that Defendants be awarded the attorneys' fees and costs, and that Defendants be awarded such other and further relief as the Court deems appropriate.

Respectfully submitted this 26th day of September, 2025.

    Respectfully submitted,

    *s/ Stephen E. Csajaghy*
    Stephen E. Csajaghy
    Condit Csajaghy LLC
    695 S. Colorado Blvd., Suite 270
    Denver, CO 80246
    City, State, ZIP Code
    Tele: 720-287-6602
    E-mail: steve@cclawcolorado.com

    *Counsel for Defendants Silverpeak Corp.*
    *and Chapman Ducote*

## CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of September, 2025, I electronically filed the foregoing **OPPOSITION TO PLAINTIFF'S *EX PARTE* MOTION FOR PREJUDGMENT ATTACHMENT** was emailed to counsel below:

Kenneth E. Citron, Esq.
Klein Coté Edwards Citron LLC
kcitron@kceclaw.com

                                                   *s/ Trish Schart*
                                                   Trish Schart